MÉNDEZ, PETITIONER AND APPELLEE, *v.* MARTÍNEZ, RESPONDENT AND APPELLANT.

APPEAL from the District Court of Aguadilla in a Proceeding for Designation of Heirs.

No. 1686.—Decided January 30, 1918.

BRIEF OF APPELLANT—ASSIGNMENT OF ERRORS—PLEADING.—It is not enough to narrate the alleged errors one by one in the brief. A separate assignment of errors should be filed so that the court may know on what the appellant

relies. It is the pleading of the appellant. The argument must be confined to the assignment of errors and the court must disregard any error that is not fundamental.

DESIGNATION OF HEIRS—RES JUDICATA.—An *ex parte* proceeding in which a designation of heirs has been obtained cannot be considered *res adjudicata* to such an extent that an authentic judgment declaring the status of children may not be used to enable them to be declared heirs in addition to the one already so declared.

ID.—NATURAL CHILD—HEIR.—If the status of a natural child, duly acknowledged, is that of an heir, then the declared fact of being an acknowledged natural child makes it an heir without further declaration.

ID.—HEIR—ESTOPPEL.—An *ex parte* proceeding for designation of heirs does not bind or exclude other heirs not included therein and would never be an estoppel against them.

NATURAL CHILD—HEIR.—An acknowledged natural child is an heir and has all the rights and responsibilities of a legitimate child, differing only in degree or amount.

The facts are stated in the opinion.

The appellant appeared *pro se* and by *Attorney Luis Muñoz Morales.*

*Messrs. Carlos Franco Soto* and *Juan B. Soto* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

From the decision of the District Court of Aguadilla it appears that Cecilia Méndez, in representation of her two minor children, Pedro Angel and Laura, presented a petition to the said court praying that in addition to Víctor P. Martínez, a legitimate son, the said Pedro and Laura, as acknowledged natural children, be declared the intestate heirs of Víctor Martínez y Martínez; that the common ancestor of all these children was Víctor Martínez, who was a resident of and died in San Sebastián in the judicial district of Aguadilla on the 26th of August, 1912; that by judgment of the District Court of Mayagüez the said Víctor P. Martínez was declared the sole and universal heir, *ab intestato,* of Víctor Martínez y Martínez; that the said two minor acknowledged natural children were on January 4, 1915, so declared by judgment in an adversary suit prosecuted against the said Víctor P. Martínez in said district court and that said judgment was affirmed on appeal to the Supreme Court of Porto

Rico and was unappealable. Wherefore, the said district court declared that all the formalities of law having been fulfilled, the said minor children, in addition to Víctor P. Martínez, were also heirs *ab intestato* of Víctor Martínez y Martínez to the extent that the law determined (*en la porción que determina la ley*).

This order or decision was made *ex parte* on the 26th of January, 1917. On the 25th of April, 1917, Víctor P. Martínez presented to the District Court of Aguadilla an exhaustive motion in opposition. To this motion the appellees presented a so-called "impugnation." Both the motion in opposition and the impugnation were submitted without argument to the court for decision. On the 7th of May. 1917, the said court rendered an order overruling the motion in opposition. The appeal was taken from this order.

The appellant has filed no assignment of errors as required by the rules of this court. It is not enough to narrate the alleged "infractions" one by one in the brief. A separate assignment of errors should be filed so that the court may know on what the appellant relies. It is the pleading of appellant. 3 C. J. 1328. The argument must be confined to the assignment of errors and the court must disregard any error that is not fundamental. In the index the appellant sums up the alleged infractions and this has been of some service to the court.

It is not a fundamental error that the appellee, in representation of her children, filed her petition for declaration of heirship in the District Court of Aguadilla. Appellant does not clearly allege that he was not apprised of the petition of Cecilia Méndez, but only that he was not notified. Furthermore, we shall see hereafter that the adversary suit between these parties concluded the appellant because, perhaps, of one of the very maxims that he invokes, namely, that "the accessory follows the principal." The alleged judgment of the District Court of Mayagüez in favor of appellant was rendered *ex parte*. In this present proceeding it must be

taken as true that Víctor Martínez y Martínez died in the judicial district of Aguadilla and that Aguadilla rather than Mayagüez was the proper jurisdiction.

An *ex parte* proceeding in favor of heirship cannot to such an extent be *res judicata* that an authentic judgment declaring the status of children may not be used to enable them to be declared heirs in addition to the one already so declared. The judgment declaring the status of the children bore a date later than the Mayagüez judgment.

The second alleged infraction relates to the failure of the court to cite the petitioner before it on the presentation of the petition by Cecilia Méndez. This alleged infraction will be disposed of in the consideration of the principal question raised in the third alleged infraction.

The fourth infraction relates to the failure to register the status of the children in the civil register, which was a useless proceeding between these parties as will appear from the main discussion.

The other alleged infractions are either unimportant or will disappear by reason of the main question in the case.

The only contention of real substance is that Laura and Angel had no right to be declared heirs of their father. In other words, the question arises whether acknowledged natural children, duly declared to be so by a competent court, are heirs of their father. To do away with one subsidiary matter we may say that if the status of a natural child duly acknowledged is that of an heir, then the declared fact of being an acknowledged natural child makes him an heir without further declaration. The death of the ancestor in the case of legitimate children causes them to be heirs immediately. Similarly, the rights of acknowledged natural children, whatever they are, arise on the death of their father. If a child has to bring suit to establish these rights there is nevertheless an inchoate right to a status or condition by reason of the death of its father and this right becomes complete whenever a judgment in favor of the natural child is

made. A legitimate child has to resort to a declaration of heirship for several reasons that are adjective rather than substantive in their nature. A legitimate heir must, as against the world, identify himself as such heir. The declaration of heirship is the approved mode of doing so, but it is not always the exclusive one. We have several times held that if, in a cause of action, the fact of heirship becomes essential, it may be proved like any other fact and a *declaratoria* is not indispensable. *Morales et al.* v. *Landrau et al.,* 15 P. R. R. 763; *Soriano* v. *Rexach,* 23 P. R. R. 531; *Fortis* v. *Fortis,* 25 P. R. R. 64, at pages 70 and 71. Being *ex parte,* it is not binding or conclusive on any heir who is not included therein. For example, if a widower married again without the knowledge of his heirs by a first wife, the *declaratoria* in favor of such heirs will in nowise conclude the later heirs. If any suit had been begun by the first heirs, the second heirs ought to be allowed to intervene at any stage of the cause on proof of their heirship. If this is disputed, the court could order the issue to be decided before granting the intervention, but a mere *declaratoria* obtained by one of the heirs would never be an estoppel against others.

We come, then, to the question of whether an acknowledged natural child is an heir. The strongest expression to the contrary is found in Falcón's commentaries on sections 939 *et seq.* of the Spanish Civil Code, 3 Falcón 326, as follows:

"The state of facts which we foresaw before knowing the law has been realized by the enactment of the Code. Natural children have now a status within the legitimate family, inasmuch as they take the name of their parents, are subject to their *patria potestas,* are maintained and educated, are entitled to be defended and protected and have their legal portion assigned by the Code, which gives them a preference to the collaterals within the intestate succession. What distinguishes them now from legitimate children? Little more than nothing: that they do not inherit where there are legitimate descendants or ascendants.

"But the law is wanting in logic. If it allowed them a legal portion, with equal reason it should have admitted their concurrence with the legitimate heirs in the intestate succession. These are reciprocal rights that go one with the other. He who is considered a forced heir in the testate succession should have the same character in the intestate succession. All the codes have so provided, and while there may be more or less justice in their provisions, there is at least logic. In legislation, where natural and spurious children and the spouse are considered as forced heirs, they are also called to the intestate succession and participate in some proportion with the legitimate descendants and ascendants in the inheritance of the natural father or mother dying intestate.

"But aside from this inconsequence of our new law, it must be confessed that all the concessions it makes to the natural heirs constitute as many weaknesses. Our historical law always gave the right of succession to the legitimate family. The traditional laws, for the purposes of succession, did not recognize as relatives others than those derived from the legitimate matrimony. The new code has attempted to stand for this principle; but fearing at the same time that it should seem intolerant, it has not had the boldness to defend it absolutely. The collateral relatives have been sacrificed, and this is the sacrifice that the new law offers to the requirements of the epoch, which are day by day giving less consideration to the sacred bonds of the legitimate family."

This was construing the Spanish Civil Code. However, in 1902 the legislature said in Spanish, *"son herederos forzosos,"* but in English, "the following are heirs," treating of forced heirs and including acknowledged natural children. This was the law until 1905 when it was changed, but the intention of the legislature, as we have suggested in *Celis Alquier* v. *Méndez,* 18 P. R. R. 86, was to substitute natural children for illegitimate children. It is true that the English text was also changed at the same time to read "forced heirs," but it was no necessary deduction from the use of the word "forced" that the legislature intended acknowledged natural children only to be heirs when there was a will. It was a situation trembling in the balance, as clearly recognized by Falcón, and it took only a slight pressure on the

part of our legislature to turn the scale for all cases in favor of the heirship of acknowledged natural children.

Except for the expression to be found here and there in Falcón and Manresa we should find no logical reason for saying that acknowledged natural children are not heirs. The Spanish law and the law of 1905 each provided that natural children legally acknowledged should have a right to a portion equal to one-half of that pertaining to legitimate children. The Spanish law, in section 843, clearly provides that the rights so acknowledged were transmissible to their descendants. What is an heir? In the Roman law it was a continuation of the personality of the deceased person. One might not take property without responsibility for debts and the devolution and the responsibility were at first imperative. Later on the heir might refuse to accept the inheritance. Under the Spanish law the acknowledged natural child bore the name of his father. He received a definite transmissible portion of his estate and, in point of fact, the burial and funeral expenses fell first on the part of free disposition assignable to acknowledged natural children in case of forced heirship. No one can doubt that their responsibility would be similar in intestate succession and that creditors could subject their portion to attachment as well as that belonging to a legitimate heir. Acknowledged natural children, then, have every kind of right and every kind of responsibility that belong to legitimate children. They differ only in degree or amount.

If the legislature should have chosen to say that acknowledged natural children should not be forced heirs when there were legitimate descendants, *non constat* that they were heirs for the portion allowed within the part of free disposition over which the testator had control. It would mean, as in lands where there is no legal portion (*legítima*), that a testator, as against collateral heirs here, might dispose of the portion that would go to the natural children in case of intestacy. He would not be bound then to respect the heirship

of his natural children where he has legitimate children. But it seems to us that to say that natural children are "forced heirs" when there is a will is to recognize that heirship not "forced" exists. That such children might have no legal portion would not destroy their status or condition as heirs. Historically, intestate succession preceded testate succession. Universal succession existed long before legal portions. Forced heirs are a later product of Roman jurisprudence. If children are forced heirs when there are no legitimate children and are entitled to a definite hereditary portion when there is no will or when there is an undisposed part of the same, they have a right of inheritance and are necessarily heirs. This court has generally considered acknowledged natural children as heirs both before and after the law of 1905. *Ex parte Smith,* 14. P. R. R. 643; *Puente* v. *Puente,* 16 P. R. R. 556; *Rivera* v. *Cámara,* 17 P. R. R. 563; *Casiano* v. *Lucchetti,* 24 P. R. R. 118.

If, then, the effect of a judgment is to put an acknowledged natural child in the same relative position as exists before a *declaratoria* for a legitimate child, the most that can be demanded of such natural child is that it should obtain a *declaratoria,* as was done in this case. As between these natural children and Víctor P. Martínez no great formality was necessary, as he necessarily knew of the legal fact established by the judgment of January 19, 1915. No fact could have been more solemnly established. But aside from this, we think that no action of nullity of a previous *declaratoria* was necessary to obtain the formal recognition of a right subsequently matured. It is not possible to charge laches against these children or allege prescription, especially because the judgment of January 19, 1915, was doubtfully executionable until this court in 1916 had affirmed the judgment of the court below. Nor can it avail the appellant that the children did not write their status in the civil register. They had something much more solemn in the judgment of the court. Too much stress cannot be laid on the

fact that the legal status or condition of these children was established by the judgment of January, 1915, and against the only person who had a countervailing right as declared by the District Court of Mayagüez. The judgment of January, 1915, destroyed whatever effect the Mayagüez judgment had against these children. Whether or not they were such heirs was the only important matter to be determined by this appeal, and it is decided adversely to the appellant.

*Affirmed.*

Justices del Toro and Hutchison concurred.

Chief Justice Hernández and Justice Aldrey took no part in the decision of this case.

On February 18, 1918, a motion for reconsideration was overruled.